IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| **JANINE DONALDSON and KIMBERLY MCKENZIE,** | ) ) ) | **CIVIL ACTION NO. 3:15-63** |
| **Plaintiffs,** | ) ) | **JUDGE KIM R. GIBSON** |
| **v.** | ) ) ) | |
| **RONALD LENSBOUER and SOMERSET COUNTY,** | ) ) ) | |
| **Defendants.** | ) | |

## MEMORANDUM OPINION

### I.    Introduction

Pending before this Court are eleven (11) motions *in Limine*:

1. Somerset County's Motion *in Limine* to Preclude Testimony with Regard to Reports of Misconduct to Co-Workers (ECF No. 63);
2. Somerset County's Motion *in Limine* to Preclude Testimony Regarding Alleged Physical Injuries (ECF No. 65);
3. Somerset County's Motion *in Limine* to Exclude Testimony of Douglas Mahony, PhD (ECF No. 67);
4. Somerset County's Motion *in Limine* to Preclude Testimony Regarding Causation of Plaintiffs' Alleged Psychiatric Injuries (ECF No. 69);
5. Somerset County's Motion *in Limine* to Preclude Testimony of Douglas Mahony, PhD, that Somerset County's Conflict of Interest Policy was Not Followed (ECF No. 71);
6. Somerset County's Motion *in Limine* to Preclude Testimony of Douglas Mahony, PhD, that Somerset County Acted with "Deliberate Indifference" (ECF No. 73);
7. Somerset County's Motion *in Limine* to Preclude Testimony of Douglas Mahony, PhD, that Somerset County's Record Retention Policy or Practice was Inadequate (ECF No. 75);
8. Somerset County's Motion *in Limine* to Preclude Testimony of Douglas Mahony, PhD, that Somerset County's Sexual Harassment Policy was Inadequate (ECF No. 77);
9. Somerset County's Motion *in Limine* to Preclude Evidence and Testimony of Retaliation or Mistreatment by Co-Workers (ECF No. 79);

10. Somerset County's Motion *in Limine* to Exclude Evidence of Alleged Harassment Against Others Than Plaintiffs ("Me Too" Evidence) (ECF No. 81); and

11. Plaintiffs' Motion *in Limine* to Preclude Defendant Ronald Lensbouer from Presenting Witnesses or Evidence (ECF No. 84).

## II. Background

Janine Donaldson and Kimberly McKenzie ("Plaintiffs") allege that Defendant Ronald Lensbouer sexually harassed and assaulted them at their place of employment, the Somerset County Jail. Plaintiffs bring three claims against Mr. Lensbouer and Somerset County ("Defendants"): (1) a hostile work environment claim under Title VII of the Civil Rights Act of 1964, as amended, 42 U.S.C. § 2000e, et seq. ("Title VII"); (2) a hostile work environment claim under the Pennsylvania Human Relations Act, 43 P.S. §§ 951-963 ("PHRA"), and (3) a claim under 42 U.S.C. § 1983 for a violation of their right to bodily integrity. (*See* ECF No. 13.)

## III. Discussion

As mentioned above, eleven (11) motions *in Limine* have been filed. The Court will address them in turn.

### A. Somerset County's Motions *in Limine*

#### 1. Somerset County's Motion *in Limine* to Preclude Testimony with Regard to Reports of Misconduct to Co-Workers

Plaintiffs plan on calling co-workers at Somerset County Jail to whom they allegedly complained about Mr. Lensbouer's sexual misconduct. For instance, Plaintiffs intend to call Dennis Vought, who will testify that, while he worked alongside Mr. Lensbouer, "multiple female employees asked [him] to speak to Lensbouer regarding his behavior." (ECF No. 62 at 2.) Plaintiffs may testify that they also told other Somerset

County Jail employees, such as Mark Keefner, about Mr. Lensbouer's misconduct. (*See* ECF No. 104 at 1.)

Somerset County asks this Court to preclude Plaintiffs from offering testimony that Plaintiffs or other employees complained to their co-workers about Mr. Lensbouer's sexual misconduct. To support their contention, Somerset County notes that Plaintiffs must prove that Somerset County is liable under a theory of *respondeat superior*, and argues that whether Mr. Vought or any other Somerset County Jail employees knew of Mr. Lensbouer's misconduct is irrelevant because Mr. Vought and Plaintiffs' other co-workers were neither Plaintiffs' supervisors nor members of the Somerset County administration, and therefore their knowledge of Mr. Lensbouer's harassment cannot be attributed to the County. (ECF No. 64 at 2-3.) Somerset County further argues that even if evidence that Plaintiffs or other employees complained about Mr. Lensbouer to their fellow co-workers were relevant, the Court should nonetheless exclude any such evidence because its probative value is substantially outweighed by the danger for unfair prejudice because, if presented with evidence that fellow Somerset County Jail employees knew about Mr. Lensbouer's conduct, it might mislead the jury and cause them to improperly infer that Somerset County had knowledge of Mr. Lensbouer's harassing behavior. (*Id.* at 4.)

In response, Plaintiffs argue that Mr. Vought's testimony does not establish *respondeat superior* liability, but rather supports Plaintiffs' Title VII claim. (ECF No. 104 at 2.) Plaintiffs note that they have the burden of proving that Mr. Lensbouer's harassment was "severe and pervasive," that it "detrimentally affected" Plaintiffs, and that it "would

3

detrimentally affect a reasonable person of the same sex." (ECF No. 104 at 2, citing *Andrews v. City of Philadelphia*, 895 F.2d 1469 (3d Cir. 1990)). Plaintiffs contend that evidence that employees reported Mr. Lensbouer's behavior to Mr. Vought and others is relevant to establishing that Lensbouer's conduct was sufficiently severe to satisfy the above-stated requirements for Plaintiffs to establish liability under Title VII.[1]

Evidence that Plaintiffs and/or their co-workers complained to other employees about Mr. Lensbouer's alleged misconduct is highly relevant in this case. Under the Federal Rules of Evidence, evidence is relevant if "(a) it has any tendency to make a fact more or less probable than it would be without the evidence; and (b) the fact is of consequence in determining the action." Fed. R. Evid. 401. As Plaintiffs argue, evidence that Plaintiffs and/or their co-workers complained to other employees about Mr. Lensbouer's alleged misconduct makes it more likely that Mr. Lensbouer's actions were "severe and pervasive," that they "detrimentally affected" Plaintiffs, and that they "would detrimentally affect a reasonable person of the same sex." *Andrews*, 895 F.2d at 1469.

Furthermore, this Court rejects Somerset County's contention that the probative value of this relevant evidence is substantially outweighed by the danger of unfair prejudice or misleading the jury. *See* Fed. R. Evid. 403. As noted above, the evidence Plaintiffs seek to introduce is highly relevant to several elements of their Title VII claims. In addition, the Court does not believe that the testimony presents a substantial risk of

---

[1] This Court notes that Plaintiffs must establish *respondeat superior* to prevail on their Title VII claim. In the Third Circuit, "five constituents must converge to bring a successful claim for a sexually hostile work environment under Title VII: (1) the employees suffered intentional discrimination because of their sex; (2) the discrimination was pervasive and regular; (3) the discrimination detrimentally affected the plaintiff; (4) the discrimination would detrimentally affect a reasonable person of the same sex in that position; and (5) the existence of *respondeat superior* liability." *Andrews v. City of Philadelphia*, 895 F.2d 1469, 1482 (3d Cir. 1990).

unfair prejudice, much less a substantial risk of prejudice that would outweigh the testimony's relevance and probative value.

Accordingly, the Court will deny Somerset County's Motion *in Limine* to Preclude Testimony with Regard to Reports of Misconduct to Co-Workers. (ECF No. 63.)

### 2. Somerset County's Motion *in Limine* to Preclude Testimony Regarding Alleged Physical Injuries

Somerset County asks this Court to prevent Ms. McKenzie from offering testimony about any medical condition and/or the cause of that condition, including testifying herself that she developed a "gastric ulcer" as a result of Mr. Lensbouer's alleged harassment. (ECF No. 66 at 2.) Somerset County asserts that Ms. McKenzie is precluded from testifying to the existence and cause of her gastric ulcer under Fed. R. Civ. P. 26(a)(2) and Fed. R. Civ. P. 26(a)(2)(B) because Plaintiffs never filed an expert witness report, failed to identify a medical provider in their Pretrial Statement, Expert Disclosures, or Witness List, and did not provide any medical records supporting Ms. McKenzie's alleged diagnosis. (*Id.* at 3-4) In response, Plaintiffs contend that Ms. McKenzie is not required to present expert testimony to prove causation in § 1983 cases and assert that Plaintiff can testify about her own physical symptoms. (ECF No. 89 at 2-3.)

Ms. McKenzie will be precluded from testifying that she was diagnosed with a gastric ulcer that was caused by Mr. Lensbouer's alleged harassment. Under Pennsylvania law, "[w]here there is no obvious causal relationship, unequivocal medical testimony is necessary to establish the causal connection." *Florig v. Sears, Roebuck & Co.*, 388 Pa. 419, 423–24 (1957) (citing *Rich v. Philadelphia Abbatoir Co.*, 160 Pa. Super. 200)); *see Fabrizi v. Rexall Sundown, Inc.*, No. CIV.A.01-289, 2004 WL 1202984, at *5 (W.D. Pa. June 2, 2004)

("unequivocal medical testimony is necessary to establish the causal connection in cases where there is no obvious . . . relationship between the accident and the injury") (quoting *In re Paoli R.R. Yard PCB Litig.*, 2000 WL 1279922, \*2 (E.D. Pa. Sept. 6, 2000)); *see Kimmel v. Pontiakowski*, No. 3:13CV2229, 2014 WL 6473809, at \*4 (M.D. Pa. Nov. 19, 2014) ("Pennsylvania law provides that 'expert medical testimony is necessary to establish the causal nexus of the injury to the tortious conduct in those cases where the connection is not obvious'") (quoting *Maliszewski v. Rendon*, 374 Pa. Super. 109 (Pa. Super. Ct. 1988)) (internal citations omitted). This Court finds that, based on the record before it, there is no obvious connection between Mr. Lensbouer's alleged harassment and the gastric ulcer that Ms. McKenzie allegedly developed. Therefore, Ms. McKenzie will be precluded from testifying that she was diagnosed with a gastric ulcer and that the gastric ulcer was caused by Mr. Lensbouer's harassment.

The cases that Plaintiffs cite to support their argument that Ms. McKenzie should be permitted to testify that Mr. Lensbouer's harassment caused her to develop a gastric ulcer are all distinguishable from this case. For instance, *Wise v. Washington Cty.*, No. CIV.A. 10-1677, 2015 WL 1757730, at \*26 (W.D. Pa. Apr. 17, 2015) involved an inmate who alleged that the defendant medical providers' "lack of or improper treatment caused him injury," *Id.* at 26, a factual situation inapplicable here, where Ms. McKenzie alleges that her emotional distress caused her to develop a specific physical condition. In *McKenna v. City of Philadelphia*, 636 F. Supp. 2d 446 (E.D. Pa. 2009), the court held that a plaintiff need not present expert medical testimony that his being fired from his employment caused him to develop depression and led him to use marijuana. *Id.* at 457. Like *Wise*, *McKenna*

6

does not apply because the plaintiff did not testify that the defendant's conduct caused him to develop a particular physical symptom. Similarly, *Standen v. Gertrude Hawk Chocolates, Inc.,* No. 3:11CV1988, 2014 WL 1095129, at *3 (M.D. Pa. Mar. 19, 2014) is inapplicable, as that case dealt with non-expert testimony regarding emotional distress, not a discrete physical condition allegedly caused by the emotional distress resulting from the defendant's conduct.

However, under the Federal Rules of Evidence, "[a] witness may testify to a matter . . . if evidence is introduced sufficient to support a finding that the witness has personal knowledge of the matter." Fed. R. Evid. 602. Obviously, Ms. McKenzie has personal knowledge of her own physical sensations and when they developed. Accordingly, Ms. McKenzie will not be precluded from testifying about her alleged physical symptoms or when she began to experience these symptoms. However, because she has not presented any expert testimony about her medical diagnosis, Ms. McKenzie will be precluded from testifying that she was diagnosed with a "gastric ulcer" that was "caused" by Mr. Lensbouer's conduct.

Accordingly, the Court will grant in part, and deny in part, Somerset County's Motion *in Limine* to Preclude Testimony Regarding Alleged Physical Injuries. (ECF No. 65.)

### 3. Somerset County's Motion *in Limine* to Exclude Testimony of Douglas Mahony, PhD

Next, Somerset County asks this Court to exclude testimony of Plaintiffs' proposed expert, Douglas Mahony, PhD. Dr. Mahony works as an Associate Professor of Management at Lehigh University and holds a PhD in Industrial & Labor Relations and

Human Resource Management from Rutgers University. (*See* ECF No. 67-1) Dr. Mahony prepared an expert report in which he provides his opinion regarding the adequacy of Somerset County's conflict of interest and record retention policies and Somerset County's handling of its investigation of complaints of sexual harassment against Mr. Lensbouer. (*See id.*) Somerset County asserts that Dr. Mahony's testimony should be excluded under Fed. R. Evid. 702 because Mr. Mahony's testimony concerns matters that are apparent through common observation and do not require specialized knowledge to understand.[2] (*See* ECF No. 68 at 2-3.)

Plaintiffs argue that this Court should permit Dr. Mahony's testimony. (ECF No. 91 at 3.) Plaintiffs state that Dr. Mahony will testify regarding: (1) "conflicts of interest" that "tainted" Somerset County's investigation into Mr. Lensbouer's alleged misconduct; (2) his opinion that "more employees should have been interviewed" in the investigation into Mr. Lensbouer's harassment; (3) that Somerset County should have fired Mr. Lensbouer in 2010; (4) that Somerset County should have "followed up regarding Lensbouer's sexual harassment training;" and (5) that Somerset County should have kept the files from the 2010 investigation into Mr. Lensbouer's misconduct. (*Id.* at 3.) Plaintiffs argue that Dr. Mahony's expert report explains topics that "are not within the understanding of a law jury." (*Id.*)

---

[2] The Court notes that in addition to arguing that this Court should prevent Dr. Mahony from offering any expert testimony whatsoever, Somerset County asserts in the alternative that this Court should prevent Dr. Mahony from testifying about specific conclusions he reached in his expert report. Because this Court is will grant Somerset County's Motion *in Limine* to Exclude Testimony of Douglas Mahony, PhD, the Court will not rule on the additional Motions in *Limine*, which are rendered moot.

Pursuant to Fed. R. Evid. 702, "[a] witness who is qualified as an expert by knowledge, skill, experience, training, or education may testify in the form of an opinion or otherwise if: . . . (a) the expert's scientific, technical, or other specialized knowledge will help the trier of fact to understand the evidence or to determine a fact in issue." Fed. R. Evid. 702. "Rule 702 has three major requirements: (1) the proffered witness must be an expert, i.e., must be qualified; (2) the expert must testify about matters requiring scientific, technical or specialized knowledge; and (3) the expert's testimony must assist the trier of fact." *Pineda v. Ford Motor Co.*, 520 F.3d 237, 244 (3d Cir. 2008) (citing *Kannankeril v. Terminix Int'l, Inc.*, 128 F.3d 802, 806 (3d Cir. 1997)) (internal citations omitted). Rule 702 "has a liberal policy of admissibility." *Pineda*, 520 F.3d at 243 (3d Cir. 2008) (quoting *Kannankeril v. Terminix Int'l, Inc.*, 128 F.3d 802, 806 (3d Cir. 1997)) (internal citations omitted).

The Third Circuit has held that "[a]s a general principle, '[e]xpert evidence is not necessary ... if all the primary facts can be accurately and intelligibly described to the jury, and if they, as [persons] of common understanding, are as capable of comprehending the primary facts and of drawing correct conclusions from them as are witnesses possessed of special or peculiar training of the subject under investigation.'" *Oddi v. Ford Motor Co.*, 234 F.3d 136, 159 (3d Cir. 2000) (internal citations omitted); *Yoder v. Sportsman's Guide, Inc.*, No. 2:14-CV-937, 2015 WL 7009547, at *11–12 (W.D. Pa. Nov. 12, 2015) (same).

Expert testimony is inadmissible "when it addresses 'lay matters which [the trier of fact] is capable of understanding and deciding without the expert's help.'" *Carnegie Mellon Univ. v. Marvell Tech. Grp., Ltd.*, No. CIV.A. 09-290, 2012 WL 6562221, at *16 (W.D.

Pa. Dec. 15, 2012), aff'd, 807 F.3d 1283 (Fed. Cir. 2015) (quoting *Snyder v. Wells Fargo Bank, N.A.,* No. Civ. 4496(SAS), 2012 WL 4876938, at *2-3 (S.D.N.Y. Oct. 15, 2012)); *Fellner v. Supreme Corp.,* No. CIV. A. 92-3680, 1995 WL 79787, at *9 (D. N.J. Feb. 21, 1995) ("if a jury is capable of understanding the subject matter through its own knowledge and experience, expert testimony is not admissible because it will not assist the trier of fact."); *see also Wolfe v. McNeil-PPC, Inc.,* No. CIV.A. 07-348, 2011 WL 1673805, at *12 (E.D. Pa. May 4, 2011) (noting that expert testimony is impermissible regarding "lay matters which a jury is capable of understanding and deciding without the expert's help.")

Some district courts have allowed expert testimony regarding institutional responses to complaints of sexual harassment in the workplace. *See, e.g., Blakey v. Cont'l Airlines,* No. 93-2194, 1997 WL 1524797, at *4 (D. N.J. Sept. 9, 1997) ("Expert testimony on the issues of what an employer can do to prevent and address complaints of sexual harassment in the workplace could assist the jury in determining whether [the defendant corporation] had an effective program to prevent and remedy sexual harassment."); *Shrout v. Black Clawson Co.,* 689 F. Supp. 774, 777 (S.D. Ohio 1988) (allowing plaintiff to present testimony from a "consultant qualified as an expert on corporate policy and procedure concerning sexual harassment."); *see also Daniels v. Grand Lux Cafe, LLC,* No. CIV.A.12-7848 JEI, 2015 WL 1398325, at *5 (D. N.J. Mar. 26, 2015) (noting that "the adequacy of sexual harassment policies and procedures in a hospitality industry workplace . . . is better suited to a human resources expert" than to an expert in criminal outcomes).

However, other courts, including the Tenth Circuit Court of Appeals, have held that expert testimony from a human resources expert is inadmissible in Title VII cases. *See Wilson v. Muckala*, 303 F.3d 1207, 1218 (10th Cir. 2002) (affirming district court's exclusion of proposed testimony from a human resources expert regarding defendant's "response plan in cases of sexual harassment" and "the reasonableness of the [defendant's] response to [the plaintiff's] claim" and noting that "the issues to which [plaintiff's] expert would have testified were not so impenetrable as to require expert testimony."); *Crawford v. George & Lynch, Inc.*, No. CV 10-949-GMS-SRF, 2013 WL 6504361, at *3 (D. Del. Dec. 9, 2013) (excluding plaintiff's human resources expert from testifying about defendant's employment practices and holding that "[t]he reasonableness of an employer's response to harassment does not require expert testimony.")

This is not a complicated case. Plaintiffs allege that Somerset County failed to properly investigate and discipline Mr. Lensbouer's sexual harassment in 2010 which caused Plaintiffs to be subject to further harassment and abuse by Mr. Lensbouer. Nothing about this case requires expert testimony to assist the jury in understanding the factual background or the relevant issues. Furthermore, the matters that Dr. Mahony would testify about are not technical, scientific, or esoteric. They jury is more than capable of determining whether the 2010 investigation into Mr. Lensbouer's harassment was tainted by conflicts of interest because Mr. Lensbouer was friends with the persons conducting the review; whether the investigation was adequately thorough; whether Mr. Lensbouer should have been fired as a result of the investigation; whether Somerset County should have engaged in more follow-up monitoring of Mr. Lensbouer; and whether the County

11

should have maintained the files from its 2010 investigation. Thus, this Court finds that the "primary facts" of which Dr. Mahony would testify can be accurately and intelligibly described to the jury, and that the jury is as capable as Dr. Mahony in comprehending the facts and drawing conclusions from them. *Oddi*, 234 F.3d at 159. Therefore, the Court finds that Dr. Mahony's testimony would not assist the trier of fact. Accordingly, this Court will grant Somerset County's Motion *in Limine* to Exclude Testimony of Douglas Mahony, PhD.

### 4. Somerset County's Motion *in Limine* to Preclude Testimony Regarding Causation of Plaintiffs' Alleged Psychiatric Injuries

Somerset County asks this Court to preclude Plaintiffs from presenting evidence that they suffered psychological injuries and non-economic damages as a result of Mr. Lensbouer's sexual harassment. Somerset County notes that, in their Pretrial Narrative Statement, Plaintiffs named several mental health treatment providers and counselors as potential witnesses. (ECF No. 52 at 5-6.) According to Somerset County, Plaintiffs will use these mental health treatment providers as expert witnesses. (ECF No. 70 at 3.) Somerset County contends that Plaintiffs' pretrial disclosures were deficient under Fed. R. Evid. 26(a)(2), which applies to expert witnesses, because Plaintiffs failed to produce a written report from any of these mental health treatment providers. (*Id.* at 2.) Somerset County further contends that Plaintiffs failed to comply with Fed. R. Evid. 26(a)(2)(C), which governs disclosure when a written report is not required, because Plaintiffs failed to disclose the subject matter of these witnesses' testimony or the facts and opinions to which they are expected to testify. (*Id.* at 3.) Overall, Somerset County argues that, because Plaintiffs failed to comply with Fed. R. Evid. 26(a)(2), this Court should preclude Plaintiffs

12

from offering testimony as to the causation of any psychological injuries Plaintiffs have suffered.

In response, Plaintiffs assert that they were not required to retain a testifying expert to prove that they sustained psychological injuries or to prove damages for emotional distress. (ECF No. 93 at 3.) Plaintiffs contend that the treating mental healthcare providers they wish to call were not required to submit expert reports under 26(a)(2)(A) because they served as Plaintiffs' treating physicians. (*Id.* at 4.) Plaintiffs further contend that they complied with Rule 26(a)(2)(C) because on September 30, 2016, Plaintiffs emailed Defendants and stated that they would call "treating therapists" Heather Hay and Kelly Marron "[t]o support the emotional distress claims . . . ". (*Id.* at 5.) Plaintiffs further note that Defendants had notice of Plaintiffs' intention to call Ms. Hay and Ms. Marron because "records of Plaintiffs' treatment with the above individuals had been disclosed" and because "Plaintiffs were deposed regarding such treatment." (*Id.*)

As a preliminary matter, this Court notes that Plaintiffs may testify to the existence and cause of their own psychological injuries and non-economic damages. "[E]xpert medical evidence is not required to prove emotional distress in section 1983 cases." *Bolden v. Se. Pennsylvania Transp. Auth.*, 21 F.3d 29, 36 (3d Cir. 1994); *McKenna v. City of Philadelphia*, 363 F. Supp. 2d 446, 463 (E.D. Pa. 2009) ("because of the remedial purpose of civil rights laws, courts have applied a relaxed causation standard in Title VII cases and have not required expert testimony to prove a defendant's actions caused a plaintiff emotional distress.") (citing *Bolden*, 21 F.3d at 35-36); *see also Crosby v. State Corr. Inst. at Greensburg*, No. CIV.A. 08-1506, 2011 WL 284098, at *5 (W.D. Pa. Jan. 25, 2011) ("It is well-

13

settled that expert medical testimony is not required to support recovery for emotional distress" in Title VII cases.) Thus, to the extent that Somerset County asks this Court to preclude Plaintiffs from testifying to the presence and cause of their own psychological injuries and non-economic damages, Somerset County's *Motion in Limine* is denied.

Having found that Plaintiffs may testify to their own psychological injuries and the causes thereof, this Court still must decide the remaining portion of Somerset County's Motion *in Limine*. Specifically, this Court must decide whether Plaintiffs will be permitted to call their treating therapists to buttress their emotional distress claims.

As Chief Judge Conner recently explained,

Rule 26(a)(2) requires litigants to disclose the identity of any individual who may provide expert testimony pursuant to Federal Rules of Evidence 702, 703, or 705. *See* Fed. R. Civ. P. 26(a)(2)(A). Witnesses "retained or specially employed to provide expert testimony" or "whose duties as the party's employee regularly involve giving expert testimony" must also provide a written expert report. Fed. R. Civ. P. 26(a)(2)(B). All other experts must disclose the subject matter of their expert testimony and a summary of the facts and opinions to which they expert to testify. Fed. R. Civ. P. 26(a)(2)(C).

*Pease v. Lycoming Engines*, No. 4:10-CV-00843, 2012 WL 162551, at \*12 (M.D. Pa. Jam. 19, 2012).

"[T]reating physicians' testimony on prognosis and causation will inherently be based on scientific, technical, or other specialized knowledge within the scope of Rule 702." *Pease*, 2012 WL 162551, at \*12 (citing *Upchurch v. Hester*, No. 05-CV-252, 2006 WL 3020772, at \*2 (D. Del. Oct. 23, 2006)). According to Plaintiffs' witness list, Ms. Hay and Ms. Marron will testify to the cause of Plaintiffs' psychological distress and the impact that Mr. Lensbouer's harassment had on Plaintiffs' psychological wellbeing. (*See* ECF No.

14

62 at 3.) Therefore, Plaintiffs' were required to disclose Ms. Hay and Ms. Marron as expert witnesses under Fed. R. Civ. P. 26(a)(2)(A).

The Court finds that Plaintiffs complied with 26(a)(2)(C). Pursuant to the Revised Scheduling Order entered in this case, the parties had until September 30, 2016 to disclose experts. (ECF No. 33-1.) On September 30, 2016, Plaintiffs sent Somerset County and Mr. Lensbouer's counsel an email in which Plaintiffs stated that "[t]o support the emotional distress claims, we'll call the womens' [sic] treating therapists. As the records indicate, Kim was treated by . . . Kelly Marron . . . [and] Janine was treated at various points by . . . Heather Hay." (ECF No. 93 at 5.) Plaintiffs also provided the treatment records for their treatment with Ms. Hay and Ms. Marron, and Plaintiffs "were deposed regarding such treatment." (*Id.*) This Court finds that Plaintiffs sufficiently disclosed "the subject matter on which [Ms. Hay and Ms. Marron are] expected to testify" and "a summary of the facts and opinions to which [Ms. Hay and Ms. Marron are] expected to testify." Fed. R. Civ. P. 26(a)(2)(C). Therefore, Plaintiffs complied with Fed. R. Civ. P. 26(a)(2)(C).[3]

The Court must now determine whether Ms. Hay and Ms. Marron were required to prepare written expert reports under Fed. R. Civ. P. 26(a)(2)(B). "In the Third Circuit, treating physicians are generally not required to submit expert reports when testifying 'based on their examination, diagnosis and treatment of a patient.'" *Pease*, 2012 WL 162551, at *13 (quoting *Mracek v. Bryn Mawr Hosp.*, 610 F. Supp. 2d 401, 406 (E.D. Pa. 2009)) (citation omitted). "The plain language of Rule 26(a)(2)(A) explicitly limits the expert

---

[3] This Court finds, in the alternative, that Plaintiffs' failure to comply with 26(a)(2)(C) was harmless, because Defendants were on notice of Plaintiffs' intention to call Ms. Hay and Ms. Marron, were provided treatment records from Plaintiffs' therapy with Ms. Hay and Ms. Marron, and had a general understanding of the facts and opinions to which Ms. Hay and Ms. Marron would testify.

report requirements to individuals 'retained or specifically employed to provide expert testimony in the case or one whose duties as the party's employee regularly involve giving expert testimony.'" *Pease*, 2012 WL 162551, at *13 (quoting Fed. R. Civ. P. 26(a)(2)(B)). Moreover, "[a] treating physician is not necessarily retained or specially employed to provide expert testimony simply because he or she proffers on causation and prognosis." *Pease*, 2012 WL 162551, at *13. "To determine whether a party retained or specially employed a treating physician to provide expert testimony, the relevant inquiry is 'whether the treating physician acquired his opinion as to the cause of the plaintiff's injuries directly through his treatment of the plaintiff.'" *Pease*, 2012 WL 162551, at *13 (quoting *Lauria v. Nat'l R.R. Passenger Corp.*, No. 95—CV—1561, 1997 WL 138906, at *2 (E.D. Pa. 1997) (citation omitted).

In *Pease*, Chief Judge Conner gave the defendant the opportunity to question the plaintiff's treating physicians outside the presence of the jury to determine whether the plaintiff's treating physicians arrived at their expert opinions about prognosis and causation during their treatment of plaintiff or at the request of the plaintiff's counsel. I will similarly allow Defendants to question Ms. Hay and Ms. Marron outside the presence of the jury. If Ms. Hay and Ms. Marron developed their opinions of diagnosis, prognosis, and causation at the request of Plaintiffs' counsel, as opposed to during their treatment of Plaintiffs, the Court will exclude their testimony for failure to comply with the expert report requirements in Fed. R. Civ. P. 26(a)(2)(B). However, if they arrived at these expert conclusions based on their personal knowledge as Plaintiffs' treating therapists, they will

be permitted to testify to their expert opinions concerning diagnosis, prognosis, and causation.

Accordingly, to the extent that Somerset County asks this Court to preclude Plaintiffs' treating physicians from testifying about Plaintiffs' psychological diagnoses, prognoses, and causation, this Court will defer a decision until after Defendants have had the opportunity to question Ms. Hay and Ms. Marron as described above.

## 5. Somerset County's Motion *in Limine* to Preclude Testimony of Douglas Mahony, PhD, that Somerset County's Conflict of Interest Policy was Not Followed

As explained *supra*, this Court will grant Somerset County's Motion *in Limine* to

Exclude Testimony of Douglas Mahony, PhD. Accordingly, this Court will deny as moot

Somerset County's Motion *in Limine* to Preclude Testimony of Douglas Mahony, PhD, that

Somerset County's Conflict of Interest Policy was Not Followed.

## 6. Somerset County's Motion *in Limine* to Preclude Testimony of Douglas Mahony, PhD, that Somerset County Acted with "Deliberate Indifference"

As explained *supra*, this Court will grant Somerset County's Motion *in Limine* to

Exclude Testimony of Douglas Mahony, PhD. Accordingly, this Court will deny as moot

Somerset County's Motion *in Limine* to Preclude Testimony of Douglas Mahony, PhD, that

Somerset County Acted with "Deliberate Indifference."

## 7. Somerset County's Motion *in Limine* to Preclude Testimony of Douglas Mahoney, PhD, that Somerset County's Record Retention Policy or Practice was Inadequate

As explained *supra*, this Court will grant Somerset County's Motion *in Limine* to

Exclude Testimony of Douglas Mahony, PhD. Accordingly, this Court will deny as moot

Somerset County's Motion *in Limine* to Preclude Testimony of Douglas Mahony, PhD, that

Somerset County's Record Retention Policy or Practice was Inadequate.

**8. Somerset County's Motion *in Limine* to Preclude Testimony of Douglas Mahoney, PhD, that Somerset County's Sexual Harassment Policy was Inadequate**

As explained *supra*, this Court will grant Somerset County's Motion *in Limine* to

Exclude Testimony of Douglas Mahony, PhD. Accordingly, this Court will deny as moot

Somerset County's Motion *in Limine* to Preclude Testimony of Douglas Mahony, PhD, that

Somerset County's Sexual Harassment Policy was Inadequate.

**9. Somerset County's Motion *in Limine* to Preclude Evidence and Testimony of Retaliation or Mistreatment by Co-Workers**

Plaintiffs "do not oppose" Somerset County's Motion *in Limine* to Preclude

Evidence and Testimony of Retaliation or Mistreatment by Co-Workers. (*See* ECF No. 100

at 2.)

Accordingly, the Court will grant Somerset County's Motion *in Limine* to Preclude

Evidence and Testimony of Retaliation or Mistreatment by Co-Workers. (ECF No. 79.)

**10. Somerset County's Motion *in Limine* to Exclude Evidence of Alleged Harassment Against Others Than Plaintiffs ("Me Too" Evidence)**

Plaintiffs wish to present evidence that Mr. Lensbouer sexually harassed other

female employees of the Somerset County Jail. Somerset County asks the Court to exclude

this evidence. Somerset County contends that the Court should exclude this "me too"

evidence for two reasons: (1) it is irrelevant to Plaintiffs' employment claims because (a)

the female co-workers were not "similarly situated" and (b) whether Mr. Lensbouer

sexually harassed Plaintiffs is not in dispute (ECF No. 83 at 2-3), and (2) the probative

value of Plaintiffs' evidence of Mr. Lensbouer harassing other women is substantially outweighed by the risk of unfair prejudice, delay, and confusing the issues, as none of the co-workers are plaintiffs in this case and because Plaintiffs did not observe Mr. Lensbouer's alleged harassment of other female employees. (*Id.* at 4-5.)

In response, Plaintiffs contend that the evidence from other female workers is probative as to whether Somerset County and Mr. Lensbouer's supervisors knew, or should have known, about Mr. Lensbouer's harassment. (ECF No. 102 at 2-3.) Plaintiffs assert that this testimony is relevant because Mr. Lensbouer sexually harassed two of the co-workers around the same time that he harassed Plaintiffs. Plaintiffs further assert that the evidence they seek to present is relevant to their claim that Somerset County's 2010 investigation and response to Mr. Lensbouer's earlier sexual harassment was unreasonable, because Mr. Lensbouer harassed two of the co-workers *after* the 2010 investigation into Mr. Lensbouer's previous acts of sexual harassment and these co-workers were never interviewed or contacted during the 2010 investigation. (*Id.* at 4.) Plaintiffs further contend that the Court should admit testimony from jail workers who found Mr. Lensbouer's harassment to be hostile and offensive because, to prevail on their Title VII claim, Plaintiffs must prove that Mr. Lensbouer's conduct would be "hostile and offensive to women of reasonable sensibilities." (*Id.* at 5, citing *Andrews*, 895 F.2d 1469 (3d Cir. 1990)).

As a preliminary matter, this Court rejects Somerset County's contention that evidence that Mr. Lensbouer sexually harassed other female employees is irrelevant to Plaintiffs' hostile work environment claim. The Third Circuit has unequivocally held that

19

in the context of a Title VII hostile work environment action, "[e]vidence of other acts of harassment is extremely probative as to whether the harassment was sexually discriminatory and whether the [defendant] knew or should have known that sexual harassment was occurring despite the formal existence of an anti-harassment policy." *Hurley v. Atl. City Police Dep't*, 174 F.3d 95, 111 (3d Cir. 1999) (citing *West v. Philadelphia Elec. Co.*, 45 F.3d 744, 752 (3d Cir. 1995)); *see also Ford v. City of Hudson*, No. 2:07-CV-5002-KM-SCM, 2015 WL 12805125, at *4 (D. N.J. Oct. 20, 2015) (noting that "[w]ithin the evidentiary boundaries of F.R.E. 401 and 403, the Third Circuit has expressly held that '[e]vidence of other acts of harassment is extremely probative' and admissible to show a hostile work environment suffered by a plaintiff.") (quoting *Hurley*, 174 F.3d at 111).

Indeed, to prevail on their hostile work environment claim, Plaintiffs must prove "the existence of *respondeat superior* liability." *Andrews*, 895 F.2d at 1482. As this Court previously stated in this case while discussing Plaintiffs' theory of *respondeat superior* liability, "[Somerset] County can also be held liable 'if [it] knew or should have known of the harassment and failed to take prompt and appropriate remedial action.'" *Donaldson v. Ronald Lensbouer & Somerset Cty.*, No. CV 15-63, 2017 WL 2199006, at *10 (W.D. Pa. May 18, 2017) (quoting *Huston v. Procter & Gamble Paper Prod. Corp.*, 568 F.3d 100, 104 (3d Cir. 2009)). Evidence that other female employees experienced sexual harassment at the Somerset County Jail is relevant to Plaintiffs' case because it makes it more likely that Somerset County knew or should have known about Mr. Lensbouer's harassment and failed to take adequate remedial measures. Fed. R. Evid. 401. This evidence is relevant

whether or not Plaintiffs were aware of the other alleged incidents of harassment. *Hurley*, 174 F.3d at 111.[4]

Furthermore, the Court is not persuaded by Somerset County's assertion that Plaintiff's "me too" evidence is irrelevant because Plaintiffs' co-workers were not "similarly situated." Plaintiffs' co-workers were allegedly subject to sexual harassment by Mr. Lensbouer around the same time period as Plaintiffs. Contrary to Somerset County's contention, the fact that Ms. McCartney and Ms. Rheel will not testify that Mr. Lensbouer touched them inappropriately does not render their testimony irrelevant insofar as they testify that they experienced other types of sexual harassment. Furthermore, the fact that Ms. McCartney was formerly employed by a third-party corporation rather than by Somerset County does not render her testimony irrelevant under the facts of this case.[5]

While evidence that Mr. Lensbouer sexually harassed other women at the Somerset County Jail is relevant to Plaintiffs' hostile work environment claim, the Court will exclude the evidence if its probative value is substantially outweighed by the risk of unfair prejudice, delay, or confusion of the issues. Fed. R. Evid. 403. Accordingly, the

---

[4] In relevant part, the Third Circuit has stated:

> Evidence of other acts of harassment is extremely probative as to whether the harassment was sexually discriminatory and whether the [defendant] knew or should have known that sexual harassment was occurring despite the formal existence of an anti-harassment policy. *See West v. Philadelphia Elec. Co.*, 45 F.3d 744, 752 (3d Cir. 1995). Neither of these questions depends on the plaintiff's knowledge of incidents; instead, they go to the motive behind the harassment, which may help the jury interpret otherwise ambiguous acts, and to the employer's liability.

*Hurley*, 174 F.3d at 111.

[5] Somerset County notes that in a recent Title VII hostile work environment case, the Third Circuit held that "the District Court properly excluded the so-called 'me too' evidence, which consisted of the deposition testimony of two former employees of M & Q Plastic Products, Inc., because the two employees were not employed by defendant M & Q Packaging but by defendant's parent corporation." *Mandel v. M & Q Packaging Corp.*, 706 F.3d 157, 168 (3d Cir. 2013). However, the Third Circuit in *Mandel* based its holding on the "broad discretion" appellate courts afford to the evidentiary rulings of district court judges. *Id.*

21

Court will instruct the jury that they may consider evidence that Mr. Lensbouer sexually harassed other female employees during this period *only* for the purposes of finding Somerset County liable, but may not consider testimony about other acts of sexual harassment to form the basis of liability.[6]

### 11. Plaintiffs' Motion *in Limine* to Preclude Defendant Ronald Lensbouer from Presenting Witnesses or Evidence

Finally, Plaintiffs ask this Court to preclude Defendant Ronald Lensbouer from Presenting Witnesses or Evidence. The Court will grant Plaintiffs' Motion.

"On motion or on its own, the court may issue any just orders, including those authorized by Rule 37(b)(2)(A)(ii)-(vii), if a party or its attorney . . . (C) fails to obey a scheduling or other pretrial order." Fed. R. Civ. P. 16. "[T]he court may impose a sanction on a party for failure to comply with any scheduling or pretrial order . . . [and] is given discretion as to how it may sanction a noncompliant party, but only to the extent that it is just." *Barkouras v. Hecker*, No. CIV.A. 06-366 (AET), 2007 WL 777664, at *4 (D. N.J. Mar. 12, 2007).

Mr. Lensbouer has repeatedly failed to comply with this Court's orders. On January 4, 2017, this Court entered an Amended Final Scheduling Order which stated that Defendants shall file their pre-trial narrative statement by May 1, 2017. (ECF No. 39-1.) However, Mr. Lensbouer never filed a pre-trial narrative statement. On May 25, 2017, this Court entered a Pretrial Order which stated that Defendants shall serve and submit

---

[6] *See Hurley*, 174 F.3d at 109 (affirming district court's decision to admit evidence that other employees had experienced sexual harassment and noting that the district court "forb[ade] the jury to consider it as directly relating to liability" and "instructed the jury that, in determining whether or not a hostile work environment existed, it could only consider conduct that actually altered [the plaintiff's] own work environment during the relevant period.")

witness lists to the Court at least three (3) weeks before trial. We are now less than one week from trial and Mr. Lensbouer has neglected to file a witness list. Mr. Lensbouer also failed to respond to Plaintiffs' Motion *in Limine* to preclude him from presenting witnesses or evidence at trial. The Court agrees with Plaintiffs that they would be prejudiced if Mr. Lensbouer were permitted to present evidence and witnesses after repeatedly failing to comply with this Court's pretrial orders and without having filed the documents necessary to give Plaintiffs the opportunity to adequately prepare for trial. Accordingly, the Court will grant Plaintiffs' Motion *in Limine* to Preclude Defendant Ronald Lensbouer from Presenting Witnesses or Evidence. (ECF No. 84.)

As discussed at the Final Pretrial Conference held on November 21, 2017, Mr. Lensbouer will be permitted to offer argument and question witnesses. However, he will be precluded from putting on his own witnesses or otherwise presenting evidence in this case.

BY THE COURT:

**KIM R. GIBSON**
**UNITED STATES DISTRICT JUDGE**

23

## IN THE UNITED STATES DISTRICT COURT
## FOR THE WESTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| **JANINE DONALDSON and KIMBERLY** | ) | **CIVIL ACTION NO. 3:15-63** |
| **MCKENZIE,** | ) | |
| | ) | |
| **Plaintiffs,** | ) | **JUDGE KIM R. GIBSON** |
| | ) | |
| **v.** | ) | |
| | ) | |
| **RONALD LENSBOUER and SOMERSET** | ) | |
| **COUNTY,** | ) | |
| | ) | |
| **Defendants.** | ) | |

### ORDER

**AND NOW**, this 21st day of November, 2017, upon consideration of the Motions *in Limine* filed by Defendant Somerset County (ECF Nos. 63, 65, 67, 69, 71, 73, 75, 77, 79, 81) and by Plaintiffs Janine Donaldson and Kimberly McKenzie (ECF No. 84), and in accordance with the accompanying memorandum opinion, **IT IS HEREBY ORDERED** that:

1. Somerset County's Motion *in Limine* to Preclude Testimony with Regard to Reports of Misconduct to Co-Workers (ECF No. 63) is **DENIED**;

2. Somerset County's Motion *in Limine* to Preclude Testimony Regarding Alleged Physical Injuries (ECF No. 65) is **GRANTED in PART and DENIED in PART.**

    a. Specifically, Somerset County's Motion is GRANTED with respect to testimony that Ms. McKenzie was diagnosed with a gastric ulcer that was caused by Mr. Lensbouer's conduct. However, Somerset County's Motion is DENIED with respect to Ms. McKenzie's testimony about her own physical symptoms based on her personal knowledge.

3. Somerset County's Motion *in Limine* to Exclude Testimony of Douglas Mahony, PhD (ECF No. 67) is **GRANTED.**

4. Somerset County's Motion *in Limine* to Preclude Testimony Regarding Causation of Plaintiffs' Alleged Psychiatric Injuries (ECF No. 69) is **DENIED in PART and DEFERRED in PART.**

   a. Specifically, Somerset County's Motion is DENIED with respect to Plaintiffs testifying to their own psychological symptoms and non-economic injuries based on their personal knowledge. Somerset County's Motion is DEFERRED with respect to testimony from Plaintiffs' treating therapists, as explained in the Memorandum Opinion.

5. Somerset County's Motion *in Limine* to Preclude Testimony of Douglas Mahony, PhD, that Somerset County's Conflict of Interest Policy was Not Followed (ECF No. 71) is **DENIED AS MOOT.**

6. Somerset County's Motion *in Limine* to Preclude Testimony of Douglas Mahony, PhD, that Somerset County Acted with "Deliberate Indifference" (ECF No. 73) is **DENIED AS MOOT.**

7. Somerset County's Motion *in Limine* to Preclude Testimony of Douglas Mahony, PhD, that Somerset County's Record Retention Policy or Practice was Inadequate (ECF No. 75) is **DENIED AS MOOT.**

8. Somerset County's Motion *in Limine* to Preclude Testimony of Douglas Mahony, PhD, that Somerset County's Sexual Harassment Policy was Inadequate (ECF No. 77) is **DENIED AS MOOT.**

9. Somerset County's Motion *in Limine* to Preclude Evidence and Testimony of Retaliation or Mistreatment by Co-Workers (ECF No. 79) is **GRANTED.**

10. Somerset County's Motion *in Limine* to Exclude Evidence of Alleged Harassment Against Others Than Plaintiffs ("Me Too" Evidence) (ECF No. 81) is **DENIED AS MODIFIED.**

    a. Specifically, Somerset County's Motion is DENIED insofar as Plaintiffs will be permitted to present evidence that Mr. Lensbouer sexually harassed other female employees at the Somerset County Jail. However, as discussed in the Memorandum Opinion, the Court will instruct the jury that they are only permitted to consider this evidence for the purpose of finding Somerset

County liable (i.e. for *respondeat superior* liability), but not to form the basis of liability.

11. Plaintiffs' Motion *in Limine* to Preclude Defendant Ronald Lensbouer from Presenting Witnesses or Evidence (ECF No. 84) is **GRANTED.**

**BY THE COURT:**

**KIM R. GIBSON**
**UNITED STATES DISTRICT JUDGE**